**LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 872, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 07–74872.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 2009.

Decided April 20, 2009.

David A. Rosenfeld, Esq., Weinberg Roger & Rosenfeld, Alameda, CA, for Petitioner.

Linda Dreeben, Esq., NLRB–National Labor Relations Board Appellate Court Branch, Washington, DC, for Respondent.

Before: D.W. NELSON, BERZON and CLIFTON, Circuit Judges.

### MEMORANDUM *

Laborers International Union of North America, Local 872 ("the Union"), petitions for review of an NLRB order dismissing its complaint against American Golf Corporation ("American"). The Union alleges that American committed an unfair labor practice when it withdrew recognition from the Union a little more than six months after the parties resumed negotiations on an initial contract, following a prior Board finding that American had committed an unfair labor practice by withdrawing recognition from the Union without proper justification. The Board dismissed the

Union's complaint, holding that American had satisfied its obligations under *Lee Lumber & Building Material Corp.*, 334 NLRB 399 (2001), by bargaining with the Union for a "reasonable period of time" before withdrawing recognition. *Am. Golf Corp.*, 350 NLRB 264, 265–67 (2007). The Union appeals, arguing that the Board's decision is not supported by substantial evidence on the record as a whole. *See* 29 U.S.C. § 160(f); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We agree and therefore grant the petition.

In concluding that American bargained with the Union for a reasonable period of time before withdrawing recognition, the Board relied in particular on its finding that the parties "did not start from scratch" when they returned to the bargaining table in November 2002, because they had engaged in "substantial bargaining" during an earlier round of negotiations from December 1999 to August 2000. *Am. Golf Corp.*, 350 NLRB at 265–66. This assessment of the impact of the earlier negotiations led the Board "to assign less weight than [it] otherwise might to the fact that the parties were bargaining for an initial contract," which is one of the *Lee Lumber* factors. *Id.* at 266–67.

Our review of the entire record convinces us that the Board's descriptions of both the earlier negotiations and the impact of those negotiations on the post–November 2002 negotiations are not supported by substantial evidence. There is *no* evidence in the record concerning the nature or the substance of the earlier round of bargaining—what happened in any of the bargaining sessions, how the parties related to one another, or what progress, if any, was made. The only

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

testimony in the record regarding the impact of the parties' prior bargaining on the current round of bargaining, which began more than two years after the earlier round ended, was provided by American's negotiator, Daniel Fears. Fears was asked, "did you and [the Union's negotiator,] Mr. Vaughn[,] start from scratch again when you began negotiations in 2002 ... ?" Fears answered,

I think the proposal made by the company picked up somewhat where we left off, in part, so I'm not sure it would be fair to say "scratch." Now, maybe from [Vaughn's] perspective he started from scratch, I'm not sure, but I—I think, you know, we picked up at some point where some negotiations had left off, from the company's standpoint.

He was then asked whether he remembered where negotiations picked up. Fears responded, "There were a—you know, I don't know—you could compare paragraph by paragraph, I suppose. I couldn't off the top of my head remember . . . ."

Far from establishing that the parties engaged in "substantial" bargaining in 1999–2000 that facilitated subsequent negotiations, Fears's testimony established that (1) he could not remember any of the details regarding the earlier bargaining sessions; (2) he could not recall where negotiations picked up in November 2002; and (3) from the Union's perspective, there may not have been any carryover at all. Moreover, although Fears sensibly suggested that a paragraph-by-paragraph analysis of the earlier and later proposals by the parties could help establish where negotiations began in November 2002 and the degree to which prior bargaining influenced that starting point, the relevant proposed agreements are not in the record, so no such analysis could be performed.

We may assume that the Board correctly concluded that the parties' earlier negotiations could be relevant under *Lee Lumber* in determining whether a "reasonable period of time" for post-remedial bargaining had elapsed. But that relevance must have an evidentiary basis. In this case, there is no evidence in the record as to the content, form, or frequency of these earlier negotiations or as to the actual impact of that earlier round on the second round of negotiations. As a result, there is no evidentiary basis for the finding that the earlier bargaining alleviated some of the burdens otherwise associated with negotiating an initial contract. *See Lee Lumber*, 334 NLRB at 402–03 & nn. 34, 40.

The Board's unsupported finding regarding the impact of the parties' earlier negotiations was critical to its analysis. As the Board recognized, "[h]ad the parties done little or no previous bargaining, the difficulties often encountered in bargaining for an initial contract might loom larger in the overall analysis." *Am. Golf Corp.*, 350 NLRB at 267. As we may affirm the Board only on its own reasoning, we may not enforce the Board's order when a critical aspect of that reasoning lacks evidentiary support. *Cf. Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 373–75, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) (holding that "reasoned decisionmaking, in which the rule announced is the rule applied," requires that the Board's "decreed result" be "supported by the reasons ... adduce[d]").

Because the Board's determination that the parties' pre–August 2000 bargaining sessions had a significant impact on the post-November 2002 bargaining sessions is not supported by substantial evidence on the record as a whole, we GRANT the Union's petition for review and REMAND

this case to the Board for further proceedings.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.